**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| JANET GUZMAN, GALLIENNE NABILA, STEPHANIE RAO and YODIT YEMANE a/k/a JODIE JOE, <br><br> Plaintiffs, <br><br> - against - <br><br> ANNEX BAR & GRILL, LLC and MARION GREEN d/b/a ETTA MAE'S PLACE f/k/a BOSSEZ LOUNGE d/b/a LIQUID LOUNGE, <br><br> Defendants | Case No.  2:25-cv-12786-DCN |

Plaintiffs JANET GUZMAN, GALLIENNE NABILA, STEPHANIE RAO and YODIT YEMANE a/k/a JODIE JOE (collectively, "Plaintiffs"), file this Complaint against ANNEX BAR & GRILL, LLC, and MARION GREEN d/b/a ETTA MAE'S PLACE f/k/a BOSSEZ LOUNGE d/b/a LIQUID LOUNGE ("Defendant") respectfully allege as follows:

## BACKGROUND

1. This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their hookah bar, ETTA MAE'S PLACE f/k/a BOSSEZ LOUNGE d/b/a LIQUID LOUNGE located at 3719 St Johns Ave, North Charleston, South Carolina 29405 (hereinafter referred to as the "Hookah Bar" or "Etta").

2. As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: As detailed below, Defendant's misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial

1

advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of publicity relating to Defendant's misappropriation of each Plaintiffs' image and likeness; c) violation of South Carolina's Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10, *et seq.*; d) defamation; and e) various common law torts, including conversion.

3.      In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using any of their Images in any way and through any medium.

## **JURISDICTION & VENUE**

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5.      This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6.      Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7.      According to publicly available records, Defendant ANNEX BAR & GRILL, LLC, is a limited liability company formed under the laws of the state of South Carolina, with its principal place of business located at 3719 St Johns Ave, North Charleston, South Carolina, 29405. Upon information and belief, ANNEX BAR & GRILL, LLC operates ETTA MAE'S PLACE f/k/a BOSSEZ LOUNGE d/b/a LIQUID LOUNGE, which is located at 3719 St Johns Ave, North Charleston, South Carolina 29405.

8.      According to publicly available records, Defendant MARION GREEN is an individual, with its principal place of business located at 3719 St Johns Ave, North Charleston, South Carolina, 29405. Upon information and belief, MARION GREEN     operates     ETTA MAE'S PLACE f/k/a BOSSEZ LOUNGE d/b/a LIQUID LOUNGE, which is located at 3719 St Johns Ave, North Charleston, South Carolina 29405.

9.     Venue is proper in the United States District Court for the District of South Carolina because Defendants' principal place of business is located in North Charleston, South Carolina, Berkeley, Charleston and Dorchester Counties.

10.     A significant portion of the alleged causes of action arose and accrued in North Charleston, South Carolina and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in North Charleston, South Carolina.

## PARTIES

### Plaintiffs

11.     Plaintiff GALLIENNE NABILA ("NABILA") is a well-known professional model, and a resident of Los Angeles County, California.

12.     Plaintiff JANET GUZMAN ("GUZMAN") is a well-known professional model, and a resident of Los Angeles County, California.

13.     Plaintiff STEPHANIE RAO ("RAO") is a well-known professional model, and a resident of Los Angeles County, California.

14.     Plaintiff YODIT YEMANE a/k/a JODIE JOE is a well-know professional model, and a resident of Los Angeles County, California.

### Defendants

15.     Defendant, ANNEX BAR & GRILL, LLC d/b/a ETTA MAE'S PLACE f/k/a BOSSEZ LOUNGE d/b/a LIQUID LOUNGE, is a limited liability company formed under the laws of the state of South Carolina and registered to conduct business in South Carolina. During times relevant to this action, ANNEX BAR & GRILL, LLC operated ETTA MAE'S PLACE F/K/A BOSSEZ LOUNGE D/B/A LIQUID LOUNGE.

16.     Service of process may be perfected upon Defendant ANNEX BAR & GRILL, LLC d/b/a ETTA MAE'S PLACE F/K/A BOSSEZ LOUNGE D/B/A LIQUID LOUNGE by serving the registered agent for service of process, Arcturus Brown, who can be located at 3719 St Johns Ave, North Charleston, SC 29405.

3

17.     Defendant, MARION GREEN d/b/a ETTA MAE'S PLACE f/k/a BOSSEZ LOUNGE d/b/a LIQUID LOUNGE, is an individual. During times relevant to this action, MARION GREEN operated ETTA MAE'S PLACE f/k/a BOSSEZ LOUNGE d/b/a LIQUID LOUNGE.

18.     Service of process may be perfected upon Defendant MARION GREEN d/b/a ETTA MAE'S PLACE F/K/A BOSSEZ LOUNGE D/B/A LIQUID LOUNGE, by serving him, who can be located at 3719 St Johns Ave, North Charleston, SC 29405.

## FACTUAL ALLEGATIONS

19.     Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

20.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

21.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendants to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendants.

22.     In the case of each Plaintiff, this apparent claim was false.

23.     Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

24.     No Plaintiff has ever received any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

25.     Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas

because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiffs' Individual Backgrounds and Careers***

26.     NABILA is an actress and model residing in Los Angeles, California. From a young age she participated in pageants, public speaking, dance, community service work, and singing. Nabila has been in the entertainment industry for over a decade working with brands such as Fashion Nova. She is currently signed to Wilhelmina Los Angeles and has a nonprofit geared towards the empowerment and advancement of young women. Nabila has over 2 million social media followers.[1]

27.     That we know of, NABILA is depicted in the photos in Exhibit "A" to promote Etta on its Facebook page. These Images were intentionally altered to make it appear that Nabila was either an employee working at Etta, that she endorsed Etta, or that she was otherwise associated or affiliated with Etta.

28.     NABILA has never been employed at Defendants' establishment, has never been hired to endorse Defendants, has never been otherwise associated or affiliated with Defendants, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

29.     GUZMAN is a social media star who is widely known for her self-titled Instagram page. She has gained popularity there for her modeling and lifestyle photos, surpassing over 2 million followers. She's widely known to be Fashion Nova's number 1 featured talent. She mostly promotes the clothes of the Fashion Nova clothing brand on her Instagram and has also appeared on the Fashion Nova Billboard located at Melrose and Fairfax (California). She was featured in an exclusive video interview with Fashion Nova in March of 2022. She has also seen her janetguzman_TikTok channel become widely popular, with her videos on the platform earning

---

[1]In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

over 1.9 million total likes. She also runs a popular OnlyFans subscription account and a travel/lifestyle/fashion vlog on YouTube.

30.    That we know of, GUZMAN is depicted in the photos in Exhibit "B" to promote Etta on its Facebook page. These Images were intentionally altered to make it appear that Guzman was either an employee working at Etta, that she endorsed Etta, or that she was otherwise associated or affiliated with Etta.

31.    GUZMAN has never been employed at Defendants' establishment, has never been hired to endorse Defendants, has never been otherwise associated or affiliated with Defendants, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

32.    RAO who is originally from Miami, FL currently resides in Los Angeles and is an influencer/model. She is currently representing Fashion Nova and has previously worked for Shein & PrettyLittleThing. She has appeared alongside Kim Kardashian in a Carolina Lemke glasses advertisement as well as other high profile ad campaigns. She has her own website which focuses on providing a fitness journey to her clients and promoting physical, mental, and spiritual wellness. Rao has over 1.1 million Instagram followers.

33.    That we know of, RAO is depicted in the photos in Exhibit "C" to promote Etta on its Facebook page and other related social media accounts. These Images were intentionally altered to make it appear that Rao was either an employee working at Etta, that she endorsed Etta, or that she was otherwise associated or affiliated with Etta.

34.    RAO has never been employed at Defendants' establishment, has never been hired to endorse Defendants, has never been otherwise associated or affiliated with Defendants, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

35.    YEMANE is a social media and modeling influencer with well over 1 million followers on Instagram. While she has appeared in music videos with Tyga and appeared on Nick Cannons' Wild N Out and has worked for Pretty Little Thing Fashion House, this model

of Eritrean descent is mostly known and now famous in the fashion industry for her near decade long association and Brand Ambassador with Fashion Nova (which has more than 10% of the USA fashion market). She was the first model to have her own clothing line collaboration with Fashion Nova, and she is regarded as one of the highest paid models in the industry.

36.     That we know of, YEMANE is depicted in the photos in Exhibit "D" to promote Etta on its Facebook page and other related social media accounts. These Images were intentionally altered to make it appear that YEMANE was either an employee working at Etta, that she endorsed Etta, or that she was otherwise associated or affiliated with Etta.

37.     YEMANE has never been employed at Defendants' establishment, has never been hired to endorse Defendants, has never been otherwise associated or affiliated with Defendants, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same

***Defendants' Business Activity and Misappropriation***

38.     Defendants operate (or operated, during the relevant time period,) a Hookah Bar, where they are (or were) engaged in the business of selling alcohol and food in a sexually charged atmosphere.

39.     Defendants own, operate, and control Etta's social media accounts, including its Facebook, Twitter, and Instagram accounts.

40.     Defendants used Etta's Facebook, Twitter, and Instagram accounts to promote Etta's, and to attract patrons.

41.     Defendants did this for their own commercial and financial benefit.

42.     Defendants have used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Etta, endorsed Etta, or was otherwise associated or affiliated with Etta.

43.     Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Etta to receive certain benefits from that false impression,

including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

44.     Defendants were well aware that none of the Plaintiffs have ever been affiliated with or employed by Etta, and at no point have any of the Plaintiffs ever endorsed Etta or otherwise been affiliated or associated with Etta.

45.     All of Defendants' activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs

46.     Defendants have never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

47.     Plaintiffs have never received any benefit from Defendants' unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

48.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

49.     The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

50.     Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendants' Misappropriation of Plaintiffs' Images***

51.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential

8

customers that Plaintiffs worked at or endorsed Etta.

52.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

53.     In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Etta.

54.     At no point was any Plaintiff ever contacted by any Defendants, or any representative of any Defendants, to request the use of any of Plaintiffs' Images.

55.     No Defendants ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

56.     No Defendants ever paid any Plaintiff for its use of her Images on any promotional materials, including Etta's website, Twitter, Facebook, or Instagram accounts.

57.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

## FIRST CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)**

58.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

59.     Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Plaintiffs from the conduct described herein

60.     Defendants used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendants' establishment, or endorsed Defendants' businesses. This was done to promote and attract clientele to Defendants' establishment, and thereby generate revenue for Defendants.

61.     Thus, this was done in furtherance of Defendants' commercial benefit.

62.     Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendants' customers are the exact demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identify to build their brand, they have acquired a distinctiveness through secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggest the characteristics of their product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand − the reason their clients seek to hire them − is unique in that it is encompassed in their identity, i.e., their persona.

63.     Both Plaintiffs and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

64.     As such, an unauthorized use of Plaintiffs' image to promote an establishment created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendants used Plaintiffs' image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness

65.     Defendants' use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that Defendants' establishment advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

66.     Despite the fact that Defendants was at all times aware that Plaintiffs neither worked at, nor endorsed its establishment, nevertheless, they used Plaintiffs' image in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendants' establishment.

67.     Defendants knew that their use of Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendants' establishment.

68.     Upon information and belief, Defendants' use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

69.     As a direct and proximate result of Defendants' actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendants.

70.     Further, any failure, neglect or default by Defendants will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

71.     Due to Defendants' unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

72.     WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendants and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## SECOND CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising)**

73.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

74.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, et seq. applies to Defendants and protects Plaintiffs from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

75.     Defendants used Plaintiffs' image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Defendants' establishment, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use their image in order to advertise, promote, and market Defendants' businesses, Defendants' establishment, and/or Defendants' establishment events and activities.

76.     Defendants' use of Plaintiffs' image, likeness and/or identity to advertise, promote and market Defendants' businesses, Defendants' establishment, and/or Defendants' events and activities as described in this Complaint was false and misleading.

77.     Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with Defendants' establishment, endorsed Defendants' businesses, Defendants' establishment or Defendants events or activities, or consented to or authorized Defendants' usage of their image in order to advertise, promote, and market Defendants' businesses or Defendants events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

78.     Defendants' false advertising described above have the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendants' establishment, as to the general quality of attendees and participants of Defendants' establishment and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Defendants' establishment, endorsed Defendants' businesses, Defendants' establishment or Defendants establishment events or activities, or consented to or authorized Defendants' usage of their image

in order to advertise, promote, and market Defendants' businesses or Defendants establishment events and activities.

79.     Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or was otherwise affiliated with Defendants' establishment, endorsed Defendants' businesses, or Defendants establishment events and activities, or consented to or authorized Defendants' usage of their image in order to advertise, promote, and market Defendants' businesses or Defendants establishment events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendants' establishment, visit Defendants' establishment, and participate in events at Defendants' establishment and had a material effect and impact on the decision of members and prospective members and participants to join Defendants' establishment, visit Defendants' establishment and take part in the events at Defendants' establishment.

80.     Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Defendants' establishment and their activities and attracting clientele to Defendants' establishment.

81.     Defendants knew or should have known that their unauthorized use of Plaintiff's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

82.     Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

83.     Defendants' wrongful conduct as described herein was willful.

84.     As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

85.     Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

86.     The method and manner in which Defendants used the image of Plaintiffs further evinces that Defendants were aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendants' use of their image to advertise Defendants' businesses.

87.     Defendants have caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the establishment lifestyle and activities at Defendants' establishment.

88.     Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**(Common Law Right of Publicity – Misappropriation of Likeness)**

89.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

90.     Defendants have appropriated each Plaintiff's likeness for Defendants' commercial purposes without authority or consent from Plaintiffs.

91.     Defendants misappropriate Plaintiffs' likenesses by publishing their image and likeness on Defendants' website or related social media accounts as part of Defendants' advertising campaign.

92.     Defendants' website and social media accounts were designed to advertise and attract business to Defendants and generate revenue for Defendants.

93.     Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

94.     Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiffs' image and likeness on various occasions, via

different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

95.     Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

96.     Upon information and belief, Defendants' use of Plaintiffs' image and likeness did in fact attract clientele and generate business for Defendants.

97.     At no point did any Defendants ever seek or receive permission or consent to use any Plaintiffs image and likeness for any purpose.

98.     Defendants were at all relevant times aware that they had never received any Plaintiffs' permission or consent to use their image and likeness in any medium for any purpose.

99.     At no point did Defendants ever compensate Plaintiffs for its unauthorized use of their image and likeness.

100.     Plaintiffs have been damaged in amounts to be proved at trial.

**FOURTH CAUSE OF ACTION**
**(Violation of South Carolina's Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10, *et seq.*)**

101.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

102.     Defendants operated Defendants website and social media accounts in order to promote Defendants, to attract clientele thereto, and to thereby generate revenue for Defendants.

103.     As such, Defendants' operation of the website and social media accounts, and their publication of image and likeness thereon, was consumer-oriented in nature and occurred in the trade and commerce with the State of South Carolina.

104.     Defendants published Plaintiffs' image and likeness on Defendants website and social media accounts to create the false impression that Plaintiffs were either strippers working at Defendants, endorsed Defendants, or were otherwise affiliated, associated, or connected with

Defendants.

105.     As such, Defendants' intent in publishing Plaintiffs' image and likeness was to mislead the public as to Plaintiffs' employment at and/or affiliation with Defendants.

106.     Defendants thus engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce in the state of South Carolina.

107.     Defendants advertising practices offends the public policy of South Carolina insofar as it constitutes misappropriation of Plaintiffs' property rights in their own image and likeness, and invasion of Plaintiffs' privacy, for Defendants commercial benefit.

108.     Defendants advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs worked for, endorsed, or are otherwise affiliated with Defendants.

109.     Defendants advertising practices cause substantial injury to consumers by creating the false impression that Plaintiffs worked for, endorsed, or are otherwise affiliated with Defendants.

110.     There are no benefits to Defendants advertising practices as set forth hereon except a benefit to Defendants own commercial interests.

111.     As a result of Defendants' unauthorized and misleading publication of Plaintiffs' image and likeness on their Defendants website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

112.     As a result of Defendants' unauthorized and misleading use of Plaintiffs' image and likeness, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

## FIFTH CAUSE OF ACTION
### (Defamation)

113.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and

16

incorporate the same by reference as though fully set forth herein.

114.    As detailed throughout this Complaint, Defendants have published altered image and likeness of Plaintiffs in order to promote their Defendants to the general public and potential clientele.

115.    Defendants' publication of said image and likeness constitutes a representation that Plaintiffs were either employed by Defendants, that they endorsed Defendants, or that they had some affiliation with Defendants.

116.    None of these representations were true.

117.    In publishing Plaintiffs' altered image and likeness, it was Defendants' intention to create a false impression to the general public that Plaintiffs worked for, endorsed, or are otherwise affiliated with Defendants.

118.    Defendants were at least negligent in publishing Plaintiffs' image and likeness because they knew, or should have known, that Plaintiffs were not employed by Defendants, had no affiliation with Defendants, had not consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

119.    In the alternative, Defendants published the image and likeness of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by Defendants, had no affiliation with Defendants, had not consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

120.    Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' image and likeness to attract clientele and generate revenue for themselves.

121.    Defendants' publication of Plaintiffs' image and likeness constitutes defamation under South Carolina law because said publication falsely accuses Plaintiffs of having acted in a manner – i.e., worked for, endorsed, or was otherwise affiliated with Defendants' establishment which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of

Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

122.　Defendants' publication of Plaintiffs' image and likeness likewise constitutes defamation per se under South Carolina law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

123.　This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was working for or endorsing the business, an inference which Defendants' publication of the image and likeness support.

124.　Defendants' publication of Plaintiffs' image and likeness likewise constitutes defamation per se under South Carolina law because, insofar as said publication falsely portrays each of the Plaintiffs Defendants' employee, it imputes unchastity to her.

125.　Defendants' publication of Plaintiffs' image and likeness caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### SIXTH CAUSE OF ACTION
### (Negligence and Respondeat Superior)

126.　Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

127.　Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and non-consensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

128.　Further, Defendants should have maintained, or failed to maintain, policies and

procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

129.    Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

130.    Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

131.    Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

132.    Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and South Carolina law, were not violated.  Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

133.    Defendants' breach was the proximate cause of the harm Plaintiffs suffered when their image and likeness were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

134.    As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Conversion)

135.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

136.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right,

title and interest in their image and likeness, and have property interests thereon.

137.     By the conduct detailed above, Defendants converted Plaintiffs' property rights in their image and likeness for their own use and financial gain image and likeness for its own use and financial gain.

138.     As a result of Defendants' unlawful conversion of Plaintiffs' image and likeness, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Unjust Enrichment)

139.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

140.     As set forth in detail above, Defendants published Plaintiffs' image and likeness in order to promote Defendants to the general public and potential clientele.

141.     Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs worked for, endorsed, or are otherwise affiliated with Defendants.

142.     Defendants' purpose in publishing Plaintiffs' image and likeness was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

143.     Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' image and likeness.

144.     Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' image and likeness because said publication has assisted Defendants in attracting clientele to their business.

145.     Plaintiffs have not been compensated for Defendants' commercial exploitation of their image and likeness, and thus any financial benefit which Defendants received due to said exploitation is unjust.

146.     As such, Plaintiffs have been damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Quantum Meruit)

147.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

148.     Plaintiffs are each internationally known models who earn their livings appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

149.     Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

150.     Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their establishment, work for and/or endorse the establishment, or are otherwise affiliated with their establishment, Defendants has not compensated Plaintiffs.

151.     Plaintiffs are therefore entitled to reasonable compensation for Defendants' unauthorized use of their image and likeness.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a)  For actual damages, in an amount to be determined at trial, relating to Plaintiffs' Causes of Action;

(b)  For an order permanently enjoining Defendants from using Plaintiffs' Images to promote Etta's  Hookah Bar;

(c)  For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117 and S.C. Code Ann. § 39-5-10, *et seq*.;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and S.C. Code Ann. § 39-5-10, *et seq*.;

(e) For such other and further relief as the Court may deem just and proper.

Dated: October 2, 2025
Mount Pleasant, SC

/s/ John V. Golaszewski
John V. Golaszewski
New York Bar No. 4121091
**THE CASAS LAW FIRM, P.C.**
1325 Avenue of the Americas, 28th Floor
New York, NY 10019
Tel: 855-267-4457
Fax: 855-220-9626
john@talentrights.law
*Pro Hac Vice Application Forthcoming*

/s/ Joshua E. Slavin
Joshua E. Slavin
Bar Number: 12602
**The Law Offices of Joshua E. Slavin**
PO BOX 762
Mount Pleasant, SC. 29465
843-619-7338
josh@attorneycarolina.com

Attorneys for Plaintiffs